**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 29, 2009

Charles R. Fulbruge III
Clerk

No. 09-50010

AVRIL WHITE

Plaintiff-Appellant

v.

MANAGEMENT & TRAINING CORPORATION

Defendant-Appellee

Appeal from the United States District Court for the
Western District of Texas, Austin Division
USDC No. 1:08-CV-9

Before KING, DAVIS, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:[*]

This appeal is from a jury verdict finding that Defendant-Appellee Management & Training Corporation ("MTC") did not terminate Plaintiff-Appellant Avril White because of her race. MTC previously employed White, who is African-American, at the Gary Job Corps Center ("Gary"), a vocational training facility in San Marcos, Texas. The only issue before this Court on appeal is whether the district court erred in not admitting evidence concerning the Gary Job Corps Retention Plan (the "Retention Plan"). Since we

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

conclude that White's "substantial rights" were not violated by the failure to admit the Retention Plan into evidence, we affirm the judgment in favor of MTC.

I.

When White was terminated, she had been serving as Gary's Employability Director, charged with managing the recruitment and retention of students at the job training center, among other responsibilities. In 2007, Gary was having considerable problems recruiting and retaining students—although MTC had initially contracted with the U.S. Department of Labor to serve 1,900 students at Gary, there were only approximately 1,400 students enrolled at the facility. To address this problem, in March 2007, White began working with MTC personnel to develop a recruitment plan to increase enrollment at the center to 1,900 students (the "Gary 1900 Plan"). Additionally, during this period, MTC decided to replace Gary's African-American director and deputy director with Dean Hoffman and Carol Savage, both of whom are white. Hoffman and Savage took up their new positions in April 2007, and shortly thereafter, Savage began to have concerns about White's performance at Gary. Savage warned White on April 27, 2007 that she had failed to complete performance evaluations for certain subordinates, and on May 7, 2007, Savage recommended White's termination after discovering that she had failed to process bonuses for certain Gary employees. Shortly thereafter, White went on medical leave, but upon her return on June 11, 2007, she was fired. An African-American replaced White temporarily after her termination, but MTC eventually hired a white woman to serve as her permanent replacement.

Subsequently, certain of MTC's remaining employees developed the Retention Plan without White's participation. Specifically, the plan called for "measurable goals" to be achieved "in arrival characteristics and retention results," including shifting from a student population that was 46.2% African-American, 33.8% Hispanic, and 20% White/Other to a profile that was

33.3% African-American, 33.3% Hispanic, and 33.3% White/Other. After Gary's management team considered the proposed plan at meetings on September 20 and 21, 2007, it was not implemented.

White filed this lawsuit on November 27, 2007 in Texas state court, and MTC subsequently removed the case to federal court. White's only claim against MTC that advanced to trial was that she was terminated because of her race in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). Prior to trial, MTC filed a motion in limine to exclude evidence concerning the Retention Plan, arguing that the plan was not implicated in MTC's decision to terminate White because she was not a student at Gary, but rather an employee. On the first day of trial, the district court granted MTC's motion, ruling that the Retention Plan was irrelevant. However, the court allowed White to present evidence concerning the Retention Plan outside the presence of the jury, to help the court determine if it should reconsider its order. After hearing testimony concerning the Retention Plan and repeated offers of proof by White, the district court let its initial ruling stand. Although the district court did not extensively explain the basis for its ruling, it appears the court held that the Retention Plan was irrelevant because the plan did not clearly call for a numerical decrease in African-American enrollment at Gary nor did it relate to employees such as White. After a three-day trial, the jury returned a verdict in favor of MTC.

## II.

A district court's rulings concerning the admission of evidence are reviewed for abuse of discretion. *See Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 356 (5th Cir. 1996). However, even if a district court has abused its discretion, an evidentiary ruling should not be reversed unless it affected a party's "substantial rights." 28 U.S.C. § 2111 (2006); *see also* FED. R. EVID. 103(a). "An error does not affect substantial rights if the court is sure, after

reviewing the entire record, that the error did not influence the jury or had but a very slight effect on its verdict." *Price v. Rosiek Constr. Co.*, 509 F.3d 704, 707-08 (5th Cir. 2007) (quoting *Kelly*, 61 F.3d at 361). We conclude that the district court's failure to admit evidence concerning the Retention Plan had at best only a "very slight" effect on the jury's verdict. Consequently, we need not address whether the district court abused its discretion by excluding the plan from evidence.

White did not solely rely on the Retention Plan to demonstrate her supervisors' alleged bias against African-Americans; instead, she presented other evidence that was much more probative than the plan would have been for demonstrating employment discrimination. The jury heard that MTC fired, transferred, or disciplined a number of African-American employees in 2007, arguably demonstrating a pattern of discrimination. The jury also heard a former coworker testify that Savage, White's supervisor, treated minority employees more harshly than white employees and made disparaging remarks about minority students. Additionally, although White could not present evidence directly concerning the plan, the jury heard testimony from Hoffman and Savage indicating that after their arrival, they became concerned about the high proportion of African-American students at Gary. In her testimony before the jury, Savage confirmed that she felt it did not take a "rocket scientist" to figure out that white students did not feel "safe" at Gary because there were not enough of them present on campus. In short, there was a fair amount of evidence before the jury demonstrating Hoffman and Savage's possible bias against African-Americans when it began its deliberations.

The jury, however, was not persuaded by the evidence of bias, likely because it credited the considerable evidence suggesting that MTC's reasons for terminating White were not pretextual. Much of the evidence heard by the jury concerned problems with White's job performance, including, among other

4

things, her failure to process bonuses for certain Gary employees who helped recruit students, her difficulty getting along with certain coworkers and business partners, and problems with her involvement in the planning and implementation of the Gary 1900 Plan. We are confident that the addition of the Retention Plan to this constellation of evidence would have no effect or at most only a very slight effect on the jury's verdict, if any.

## III.

Consequently, since White's substantial rights were not violated by the district court's ruling, we must AFFIRM the judgment below.